**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MARISSA DIBARTOLO, individually on behalf of herself and all others similarly situated, | x : : : |
| Plaintiffs, | : Case No. : |
| v. | : : |
| GOJO INDUSTRIES, INC., | : **CLASS ACTION COMPLAINT** : |
| Defendant. | : **JURY TRIAL DEMANDED** : : : |
| | x |

Plaintiff Marissa DiBartolo ("Plaintiff"), by her attorneys, alleges the following upon information and belief, except for allegations pertaining to Plaintiff which are based on personal knowledge:

1.    Gojo Industries, Inc. ("Defendant") manufactures, distributes, markets, labels and sells topical antiseptic products consisting primarily of ethyl alcohol under the Purell brand and Advanced Hand Sanitizer product line which includes gels and foams ("Products").

2.    The Products are available to consumers from retail and online stores of third-parties and Defendant's website and are sold in various sizes including 12 ounces (354 Milliliters).

3.      The Products contain substantially similar representations on the labels including "2X Sanitizing Strength*: 1 squirt PURELL Advanced = 2 squirts Other National Brands," "Advanced Hand Sanitizer," "Kills 99.99% of Illness Causing Germs," "Refreshing Gel" and "Leaves Hands Feeling Soft."



4.      The Products' website and social media accounts contains additional representations attesting to their ability to prevent colds, flu and promote educational achievement.

5.      However, the Food and Drug Administration ("FDA") recently issued a warning letter to Defendant which detailed Defendant's false, deceptive and dangerous marketing of the

2

Products, as described below.[1]

| General Claim | Specific Quotations from Defendant's Marketing Materials and Website |
| --- | --- |
| Germs | • Kills more than 99.99% of most common germs that may cause illness in a healthcare setting, including MRSA & VRE. |
| | **Candida auris in the Healthcare Setting** |
| Candida auris | • To help prevent transmission, hand hygiene with an alcohol-based hand sanitizer is recommended along with hand washing if hands are soiled. PURELL® Advanced Gel, Foam, and Ultra-Nourishing Foam Hand Sanitizer products demonstrated effectiveness against a drug resistant clinical strain of Candida auris in lab testing. |
| | **PURELL® Products Help Eliminate MRSA & VRE** |
| 100% MRSA & VRE Reduction | • 100% MRSA & VRE Reduction [] . . . A recent outcome study shows that providing the right products, in a customized solution, along with educational resources for athletes and staff can reduce MRSA and VRE by 100%[] |
| | **The PURELL SOLUTION™ for Education** |
| Educational Outcomes/Truancy | • 51% Reduced Student Absenteeism<br>• PURELL® products have proven results in delivering positive health outcomes.<br>• Illness causes 144 million lost school days each year.<br>• In a recent study, student absenteeism was reduced by 51% when PURELL hand hygiene products were used in conjunction with a curriculum to teach kids about good hand hygiene[] . . .<br>• 10% Less Teacher Absenteeism . . . PURELL® Products Help Teachers Stay Well . . .<br>• New teachers are particularly more susceptible to student borne illness[].<br>• In one study, schools that combined hand-hygiene education with PURELL® products reduced teacher absenteeism by 10%[]. |

---

[1] *See* FDA, Warning Letter to Gojo Industries, Inc., January 17, 2020, MARCS-CMS 599132

|                                        |                                                                                                                                                                                              |
| -------------------------------------- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                                        | • PURELL® Products are Proven to Reduce Absenteeism                                                                                                                                           |
|                                        | • On average, illness causes 144 million lost school days each year[] and missing school can have a significant effect on a student's performance.                                           |
|                                        | • Research has shown that when used alongside a curriculum to teach students about hand hygiene, PURELL® products can reduce student absenteeism by up to 51%[].                             |
|                                        | • Additionally, teachers who follow this program also experience a 10% reduction of absenteeism[].                                                                                           |
| Common Colds                           | • PURELL® Products Help Eliminate MRSA & VRE . . . 100% MRSA & The PURELL SOLUTION™ has the products you need to help prevent the spread of infection this germ season.                      |

**Illness Outbreak**

|                                        |                                                                                                                                                                                              |
| -------------------------------------- | -------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|                                        | • What Steps Can I Take to Prevent the Spread of Norovirus?                                                                                                                                   |
|                                        | • Even though norovirus is highly contagious, there are ways you can reduce the risk of its spread.                                                                                           |
|                                        | • According to the Centers for Disease Control and Prevention, follow these steps to reduce the spread of the virus.                                                                          |
|                                        | • 1. Practice good hand hygiene. Make sure to wash your hands with soap and water at key moments, especially after using the restroom since the virus can spread through stool.               |
| Ebola virus, norovirus, and influenza  | • Alcohol-based hand sanitizers with at least 60% alcohol can be used in addition to handwashing. . .                                                                                         |
|                                        | • Are PURELL® Hand Sanitizer products effective against the flu?                                                                                                                             |
|                                        | • The FDA does not allow hand sanitizer brands to make viral claims, but from a scientific perspective, influenza is an enveloped virus. Enveloped viruses in general are easily killed or inactivated by alcohol. |
|                                        | • The World Health Organization (WHO) and the Center for Disease Control and Prevention (CDC) are recommending the use of alcohol-based hand sanitizer as a preventive measure for flu prevention" |

- Is PURELL® Advanced Hand Sanitizer Effective Against Ebola?
- As of today, we are not aware of any hand sanitizers that have been tested against Ebola viruses, including PURELL® Advanced Hand Sanitizer.
- However, it is important to note that the Ebola virus is an enveloped virus. Enveloped viruses in general are easily killed or inactivated by alcohol.
- World Health Organization (WHO) and the C`enter for Disease Control and Prevention (CDC) are recommending the use of alcohol-based hand sanitizer as a preventive measure during this outbreak . . .

6.      The FDA determined that Defendant's statements regarding the efficacy of the Products to combat Ebola, norovirus, influenza, absenteeism and common colds make the claim that the Products are "intended for the diagnosis, cure, mitigation, treatment, or prevention of disease, and/or under section 201(g)(1)(C) of the FD&C Act, 21 U.S.C. 321(g)(1)(C), because they are intended to affect the structure or any function of the body."[2]

7.      However, there are no credible scientific studies that link killing or decreasing bacteria on the skin with preventing any of the conditions Defendant claims the Products prevent.

8.      The Products are marketed as drugs but lack approval from the FDA.

9.      The FDA has never established that the Products' main ingredient, ethyl alcohol, is generally recognized as safe and effective for its intended antiseptic use.

10.      The Products' claims are beyond those permitted for topical antiseptics which the FDA has allowed.

11.      No topical antiseptic products have ever been able to achieve the results Defendant advertises as such outcomes are beyond the ability of ethyl alcohol solution.

---

[2] *Id.*

6

12.     Defendant's claims are harmful and deceptive to consumers because they give the impression that using the Products is sufficient to prevent the above-described diseases and illnesses.

13.     When consumers believe Defendant's claims, they are less likely to engage in other precautionary and preventive behavior which actually will prevent transmission of these diseases.

14.     Defendant's unqualified claims with respect to absenteeism gives parents the message that regardless of specific reasons their children may have missed school, use of the Products would be able to reduce their missed days by half.

15.     Defendant's invocation of the Ebola virus is intended to demonstrate the potency of the Products.

16.     Defendant stops short of disclaiming the Products' efficacy in preventing or curing Ebola, but couches its response in qualifying language: "As of today, we are not aware of any hand sanitizers that have been tested against Ebola viruses."

17.     In other words, Defendant claims that the Products are effective enough that *if* there was testing of hand sanitizers against Ebola, the Products *could* prevent Ebola.

18.     While the average American has almost zero chance of ever contracting "Ebola," its mention is shorthand to describe the most horrific and fatal disease in existence.

19.     Even *if* the Products may not be effective against Ebola, the logic goes, consumers could reasonably expect the Products to be effective at preventing diseases less serious than Ebola, which would include practically every other known disease.

20.     The recent outbreak of the potentially-fatal Coronavirus has prompted increased demand for the Products.

21.     According to some reports, Defendant has promoted the Products as a viable means

of preventing transmission of Coronavirus.

22.     The Products are unable to effectively combat Ebola, norovirus, influenza, absenteeism or common colds, but through their representations, cause consumers to defer or forgo taking other concrete measures at preventing disease and illness, thereby increasing their chances of contracting same.

23.     Defendant's branding and marketing of the Products is designed to – and did – deceive, mislead, and defraud consumers.

24.     Defendant's false, deceptive, and misleading marketing of the Products has enabled Defendant to sell more of the Products, and at higher prices per unit, than it would have in the absence of this misconduct.

25.     This results in additional profits to Defendant at the expense of consumers and consumers' greater susceptibility to disease, and illness.

26.     The value of the Products that Plaintiff actually purchased and used was materially less than their value as represented by Defendant.

27.     Had Plaintiff and class members known the truth, they would not have bought the Products or would have paid less for them, and would not have forgone or deferred proven, medically established recommendations to prevent transmission of disease and illness.

28.     The Products contains other representations which are misleading and deceptive.

29.     As a result of the false and misleading labeling, the Products are sold at a premium price, approximately no less than $2.99 per 12 oz, excluding tax, compared to other similar products represented in a non-misleading way.

**Jurisdiction and Venue**

30.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28

U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendant Gojo Industries, Inc. is a citizen of the State of Ohio; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

31.     This Court has personal jurisdiction over Defendant because Defendant conducts and transacts business in the State of New York, contracts to supply goods within the State of New York, and supplies goods within the State of New York.

32.     Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York.  A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

### Parties

**Plaintiff**

33.     Plaintiff is an individual consumer who, at all times material hereto, was a citizen of Brooklyn, New York.  Plaintiff purchased the Products during the Class Period online and in retail stores.  Prior to purchasing the Products, Plaintiff viewed the representations on the Products' packaging and Defendant's website that the Products "Kill[] 99.99% of Illness Causing Germs," and effectively combat ebola, norovirus, influenza, absenteeism and common colds.

34.     Had Defendant not made the false, misleading, and deceptive representations that the Products "Kill[] 99.99% of Illness Causing Germs," and effectively combat Ebola, norovirus, influenza, absenteeism and common colds, Plaintiff would not have been willing to pay the same amount for the Products and, consequently, she would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for the Products than she would have had she known the truth about the Products.  The Products Plaintiff received was worth less than the Products for which she paid.  Plaintiff was injured in fact and lost money as a result of Defendant's improper conduct. If the Products actually "Kill[ed] 99.99% of Illness Causing Germs," and

13

effectively combated Ebola, norovirus, influenza, absenteeism and common colds as represented on the Products' labels, Plaintiff would purchase the Products in the immediate future.

**Defendant**

35.     Defendant Gojo Industries, Inc. is an Ohio corporation with a principal place of business in Cuyahoga Falls, Ohio, Summit County. Defendant manufactures, markets, advertises and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

**Class Allegations**

36.     Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendant orchestrated deceptive marketing and labeling practices. Defendant's customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

37.     The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

38.     Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

39.     The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

40.     The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

41.     <u>Numerosity</u>: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members

13

described above who have been damaged by Defendant's deceptive and misleading practices.

42.     Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.     Whether Defendant is responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.     Whether Defendant's misconduct set forth in this Complaint demonstrates that Defendant has engaged in unfair, fraudulent, or unlawful business practices with respect to the advertising, marketing, and sale of its Products;

c.     Whether Defendant made false and/or misleading statements to the Class and the public concerning the contents of its Products;

d.     Whether Defendant's false and misleading statements concerning its Products was likely to deceive the public;

e.     Whether Plaintiff and the Class are entitled to injunctive relief;

f.     Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

43.     Typicality: Plaintiff is a member of the Class. Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendant's Products. Plaintiff is entitled to relief under the same causes of action as the other Class Members.

44.     Adequacy: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and they intend to

13

vigorously prosecute this action.

45.    <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class. The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendant's deceptive and misleading marketing and labeling practices.

46.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.    When Defendant's liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.      Class Members' interests in individually controlling the prosecution of separate actions

is outweighed by their interest in efficient resolution by single class action; and

i.      It would be desirable to concentrate in this single venue the litigation of all plaintiffs

who were induced by Defendant's uniform false advertising to purchase its Products.

47.      Accordingly, this Class is properly brought and should be maintained as a class

action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate

over any questions affecting only individual members, and because a class action is superior to other

available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

48.      Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide

injunctive relief.  Here, Defendant has engaged in conduct resulting in misleading consumers about

its Products.  Since Defendant's conduct has been uniformly directed at all consumers in the United

States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and

suitable solution to remedy Defendant's continuing misconduct.  Plaintiff would purchase the

Products again if they indeed "Kill[ed] 99.99% of Illness Causing Germs," and effectively combated

Ebola, norovirus, influenza, absenteeism and common colds.

49.      The injunctive Class is properly brought and should be maintained as a class action

under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and

adequacy because:

a.      <u>Numerosity</u>: Individual joinder of the injunctive Class Members would be wholly

impracticable.  Defendant's Products have been purchased by thousands of people

throughout the United States;

b.      <u>Commonality</u>: Questions of law and fact are common to members of the Class.

Defendant's misconduct was uniformly directed at all consumers.  Thus, all members

13

of the Class have a common cause against Defendant to stop its misleading conduct through an injunction.  Since the issues presented by this injunctive Class deal exclusively with Defendant's misconduct, resolution of these questions would necessarily be common to the entire Class.  Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

 i.  Resolution of the issues presented in the 23(b)(3) class;

 ii.  Whether members of the Class will continue to suffer harm by virtue of Defendant's deceptive product marketing and labeling; and

 iii.  Whether, on equitable grounds, Defendant should be prevented from continuing to deceptively mislabel its Products.

c. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendant's deceptive and misleading marketing, labeling, and advertising practices).  Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendant's Products which were sold unfairly and deceptively to consumers throughout the United States.

d. <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class.  Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights.  In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

50. The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on

grounds generally applicable to the entire injunctive Class. Certification under Rule 23(b)(2) is appropriate because Defendant has acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendant has marketed its Products using the same misleading and deceptive labeling to all of the Class Members). Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendant would be prevented from continuing its misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of its Product. Plaintiff would purchase the Products again if they indeed "Kill[ed] 99.99% of Illness Causing Germs," and effectively combated Ebola, norovirus, influenza, absenteeism and common colds.

### FIRST CAUSE OF ACTION
### VIOLATION OF NEW YORK GBL § 349
**(On Behalf of Plaintiff and New York Subclass Members)**

51.    Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

52.    New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

53.    The conduct of Defendant alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendant, enjoining them from inaccurately describing, labeling, marketing, and promoting the Product.

54.    There is no adequate remedy at law.

55.    Defendant misleadingly, inaccurately, and deceptively advertises and markets its Products to consumers.

13

56.     Defendant's improper consumer-oriented conduct—including labeling and advertising the Products as killing 99.99% of illness causing germs and effectively combating Ebola, norovirus, influenza, absenteeism and common colds—is misleading in a material way in that it, inter alia, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendant's Products and to use the Products when they otherwise would not have.  Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

57.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for Products that—contrary to Defendant's representations— do not kill 99.99% of illness causing germs or effectively combat Ebola, norovirus, influenza, absenteeism or common colds. Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

58.     Defendant's advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products and to pay a premium price for them.

59.     Defendant's deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

60.     As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

13

## SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK GBL § 350
### (On Behalf of Plaintiff and the New York Subclass Members)

61.　　Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

62.　　N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

63.　　N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

64.　　Defendant's labeling and advertisements contain untrue and materially misleading statements concerning Defendant's Products inasmuch as they misrepresent that the Products kill 99.99% of illness causing germs and effectively combat Ebola, norovirus, influenza, absenteeism and common colds.

65.　　Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which— contrary to Defendant's representations—do not kill 99.99% of illness causing germs or effectively combat Ebola, norovirus, influenza, absenteeism or common colds.  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

66.　　Defendant's advertising, packaging and product labeling induced Plaintiff and the New York Subclass Members to buy Defendant's Products.

67.    Defendant made its untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

68.    Defendant's conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

69.    Defendant made the material misrepresentations described in this Complaint in Defendant's advertising, and on the Products' packaging and labeling.

70.    Defendant's material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendant's material misrepresentations.

71.    As a result of Defendant's recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
#### (On Behalf of Plaintiff and All Class Members)

72.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.    Defendant provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products kill 99.99% of illness causing germs and effectively combat Ebola, norovirus, influenza, absenteeism and common colds The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

74.    These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

13

75.     Plaintiff and Class Members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

76.     Within a reasonable time after they knew or should have known of Defendant's breach, Plaintiff, on behalf of herself and Class Members, placed Defendant on notice of its breach, giving Defendant an opportunity to cure its breach, which they refused to do.

77.     Defendant breached the express warranty because the Products do not kill 99.99% of illness causing germs or effectively combated Ebola, norovirus, influenza, absenteeism or common colds

78.     Defendant thereby breached the following state warranty laws:

      a.      Code of Ala. § 7-2-313;

      b.      Alaska Stat. § 45.02.313;

      c.      A.R.S. § 47-2313;

      d.      A.C.A. § 4-2-313;

      e.      Cal. Comm. Code § 2313;

      f.      Colo. Rev. Stat. § 4-2-313;

      g.      Conn. Gen. Stat. § 42a-2-313;

      h.      6 Del. C. § 2-313;

      i.      D.C. Code § 28:2-313;

      j.      Fla. Stat. § 672.313;

      k.      O.C.G.A. § 11-2-313;

      l.      H.R.S. § 490:2-313;

      m.      Idaho Code § 28-2-313;

      n.      810 I.L.C.S. 5/2-313;

o.     Ind. Code § 26-1-2-313;

p.     Iowa Code § 554.2313;

q.     K.S.A. § 84-2-313;

r.     K.R.S. § 355.2-313;

s.     11 M.R.S. § 2-313;

t.     Md. Commercial Law Code Ann. § 2-313;

u.     106 Mass. Gen. Laws Ann. § 2-313;

v.     M.C.L.S. § 440.2313;

w.     Minn. Stat. § 336.2-313;

x.     Miss. Code Ann. § 75-2-313;

y.     R.S. Mo. § 400.2-313;

z.     Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.     13 Pa. Rev. Stat. § 72-3130;

mm.     R.I. Gen. Laws § 6A-2-313;

nn.     S.C. Code Ann. § 36-2-313;

oo.     S.D. Codified Laws, § 57A-2-313;

pp.     Tenn. Code Ann. § 47-2-313;

qq.     Tex. Bus. & Com. Code § 2.313;

rr.     Utah Code Ann. § 70A-2-313;

ss.     9A V.S.A. § 2-313;

tt.     Va. Code Ann. § 59.1-504.2;

uu.     Wash. Rev. Code Ann. § 6A.2-313;

vv.     W. Va. Code § 46-2-313;

ww.     Wis. Stat. § 402.313;

xx.     Wyo. Stat. § 34.1-2-313.

79.     As a direct and proximate result of Defendant's breach of express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and All Class Members)**

80.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

82.     The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written

13

warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

83.     The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

84.     Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

85.     Defendant is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

86.     Defendant represented in writing that the Products kill 99.99% of illness causing germs and effectively combat Ebola, norovirus, influenza, absenteeism and common colds

87.     These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

88.     As alleged herein, Defendant breached the written warranty by selling consumers a Products that do not kill 99.99% of illness causing germs or effectively combat Ebola, norovirus, influenza, absenteeism or  common colds

89.     The Products does not conform to Defendant's written warranty and therefore violates the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## COMMON LAW UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members)

90.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

91.     Plaintiff, on behalf of herself and consumers nationwide, brings a common law claim for unjust enrichment.

92.     Defendant's conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling the Products while misrepresenting and omitting material facts.

93.     Defendant's unlawful conduct as described in this Complaint allowed Defendant to knowingly realize substantial revenues from selling the Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendant's benefit and enrichment.  Defendant has thereby violated fundamental principles of justice, equity, and good conscience.

94.     Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendant for the Products, which were not as Defendant represented them to be.

95.     Under New York's common law principles of unjust enrichment, it is inequitable for Defendant to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

96.     Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, pray for judgment as follows:

13

(a)     Declaring this action to be a proper class action and certifying Plaintiff as the

representative of the Class under Rule 23 of the FRCP;

(b)     Entering preliminary and permanent injunctive relief against Defendant, directing

Defendant to correct its practices and to comply with consumer protection statutes

nationwide, including New York consumer protection laws;

(c)     Awarding monetary damages, including treble damages;

(d)     Awarding punitive damages;

(e)     Awarding Plaintiff and Class Members their costs and expenses incurred in this action,

including reasonable allowance of fees for Plaintiff's attorneys and experts, and

reimbursement of Plaintiff's expenses; and

(f)     Granting such other and further relief as the Court may deem just and proper.

Dated: March 24, 2020

Respectfully submitted,

**THE SULTZER LAW GROUP P.C.**

/s/ Joseph Lipari

By: _____

Joseph Lipari, Esq.
270 Madison Avenue, Suite 1800
New York, NY 10016
Tel: (917) 444-1960
Fax: (888) 749-7747
liparij@thesultzerlawgroup.com

*Counsel for Plaintiff and the Class*